UNDERWOOD TYPEWRITER COMPANY, Appellant v. CENTURY REALTY COMPANY, Respondent.

St. Louis Court of Appeals, April 24, 1906.

(Opinion by Nortoni, J.)

1. **CONTRACT: Consideration: Nudum Pactum.** Where a written lease provided that the lessee should not sublet the premises or assign the lease without the written consent of the lessor, and the lessor, during the term, made its promise in writing to the lessee to give its written consent to an assignment of the lease provided the lessee would procure an acceptable tenant, that agreement when entered into was *nudum pactum.*

2. ———: ———: **Inconvenience to Promisee: Performance.** But when the tenant afterwards, on the faith of the promise, incurred inconvenience and expense in procuring an acceptable tenant, and did procure one acceptable to the lessor, the loss and inconvenience thus incurred was a sufficient consideration and related back to the inception of the agreement. [Distinguishing Blaine v. Knapp, 140 Mo. 241.]

**(Dissenting Opinion by Bland, P. J.)**

3. ———: ———: Nudum Pactum. The agreement of the lessor in such case to let in an "acceptable tenant" is illusory because upon a condition which reserves unlimited option to the lessor to say who shall or shall not be an acceptable tenant and the contract is unenforcible for that reason. [Blaine v. Knapp, 140 Mo. 241.]

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED AND CERTIFIED TO SUPREME COURT.

*Carter & Sager* and *John B. Denvir, Jr.,* for appellant.

(1) The contract between plaintiff and defendant is mutual and binding. Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384. (2) Even though the promise of defendant was without consideration originally, still the performance of the condition by plaintiff relates back to the promise of defendant and clothes it with a valid consideration. 7 Am. and Eng. Ency. of Law (2 Ed.), p. 115; 9 Cyc. of Law and Proc., p. 333; School District of K. C. v. Sheidley, 138 Mo. 672, 40 S. W. 656; Lewis v. Life Ins. Co., 61 Mo. 534; Imp. Co. v. Towers Ex. & Devisees, 158 Mo. 282, 59 S. W. 239; Lindell v. Rokes, 60 Mo. 249; Marks v. Bank, 8 Mo. 317; German v. Culver, 83 Mo. App. 411; Bank v. Graham, 74 Mo. App. 251; Houck v. Frisbee, 66 Mo. App. 16.

*Dawson & Garvin* for respondent.

(1) The petition does not state facts sufficient to constitute a cause of action, and the demurrer was properly sustained. Dougherty v. Matthews, 35 Mo. 520, 527; Warren v. Castello, 109 Mo. 338, 19 S. W. 29; Steffen v. Railroad, 156 Mo. 322, 56 S. W. 1125. The alleged

agreement is a *nud. pact.* without any consideration or mutuality. Koerper v. Ins. Co., 102 Mo. App. 543, 550, 77 S. W. 307; Railroad v. Matthews, 64 Ark. 398. It is not such a promise as imports a consideration because it is in writing. R. S. 1899, sec. 894; Jeffries v. Hager, 18 Mo. 272. (2) Plaintiff is not bound by the alleged agreement to do anything and has done nothing at defendant's request or for its benefit. Dorsey v. Packwood, 12 How., 53 U. S. 126; Mers v. Ins. Co., 68 Mo. 127, 130; Arnold v. Cason, 95 Mo. App. 426, 69 S. W. 34; German v. Gilbert, 83 Mo. App. 411, 416; Bank v. Bennett, 76 Pa. St. 402.

STATEMENT.—Omitting caption, the petition is as follows:

"Now comes the plaintiff in the above-entitled cause and by leave of court first had and obtained, files this, its second amended petition herein, and for cause of action states that it is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.

"That the defendant is a corporation organized and existing under and by virtue of the laws of the State of Missouri.

"That the plaintiff was formerly known as the Wagner Typewriter Company, but it has duly changed its name to the Underwood Typewriter Company.

"That defendant Century Realty Company is the successor to the Century Building Company.

"That on the fifth day of December, 1900, plaintiff entered into an agreement in writing with said Century Building Company, whereby plaintiff leased the space known as No. 309 North Ninth street in the city of St. Louis, State of Missouri, and certain space appurtenant thereto for a period of five years beginning on the first day of February, 1901, and ending on the thirty-first day of January, 1905. That plaintiff thereupon entered into possession of said premises.

"That said agreement provided among other things,

that neither said premises nor any part thereof should be assigned or underlet without the written consent of defendant indorsed thereon. That plaintiff secured from defendant its written agreement to give its written consent to an assignment of said lease to an acceptable tenant. That relying upon said written agreement, plaintiff, with the knowledge of defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant for the space embraced in said lease, and did secure such tenant for said space.

"That notwithstanding the fact that plaintiff had procured an acceptable tenant for said space, defendant refused and still refuses to consent to the assignment of said lease and to permit said tenant to enter into the possession of said premises though often requested so to do.

"That by reason of defendant's refusal to consent to said assignment of said lease as aforesaid, plaintiff was and is prevented by defendant from securing such tenant at a large advance over the rent reserved by defendant under said lease to its damage in the sum of four thousand five hundred dollars.

"Wherefore plaintiff prays judgment for four thousand five hundred dollars.

To this petition defendant interposed a general demurrer, making the point that the agreement alleged appeared to be void for want of consideration and mutuality. The court sustained the demurrer and plaintiff declined to further plead. Thereupon judgment was entered by the court for defendant and plaintiff appealed.

NORTONI, J. (after stating the facts).—The material facts alleged are: first, that on December 5, 1900, plaintiff became lessee of the premises described in the petition under a written lease executed by defendant for a term of five years; second, that under the terms of said lease, plaintiff was prohibited from subletting the premises or assigning the lease without first obtaining the

written consent of the defendant on the back of the said written lease; third, that the defendant afterwards, during the term of the lease, made its promise in writing to the plaintiff to give its written consent on the back of said lease to an assignment thereof by plaintiff to an acceptable tenant when procured and produced to it by plaintiff; fourth, that relying upon this promise, plaintiff, with the knowledge of defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant for the premises and did secure such tenant from whom plaintiff could have realized a profit to itself had the defendant executed the written consent to assign the lease, as it had theretofore promised; fifth, that the defendant refused after plaintiff had performed on its part, to give its said written consent to the assignment of the lease, whereby plaintiff is damaged, etc.

The demurrer admits these facts to be true and the question presented thereby calling for the opinion of the court is: does the petition show mutuality in that sense that an action can be maintained by a party who has performed its part against the party who refuses to perform? We are quite clear that it does. Now, it is true that there is no mutuality shown between these parties in the first instance. The agreement, when entered into, was clearly *nudum pactum*. The defendant being under no manner of obligation to do so, made a written promise to make the indorsement on the lease permitting the assignment thereof upon plaintiff's furnishing a satisfactory tenant. Now for this agreement the defendant received no compensation nor reward of any kind or nature, nor did plaintiff inconvenience itself or forfeit any right or make any expenditure of time or money at the time of the promise, and while the matter was in this posture, it is true, plaintiff could not have maintained any suit thereon for its breach until he had first performed. In fact, there could have been no breach until plaintiff had first performed, for his performance was essentially a precedent condition and there was therefore no obligation

imposed upon the defendant until the plaintiff had performed, by finding and producing a satisfactory tenant. It is true, on the other hand, that defendant could not have maintained any suit against the plaintiff thereon for its failure to perform, because there was no obligation imposed thereby upon it to perform; in fact, prior to the plaintiff's performance, the matter stood as it was, a mere naked promise on the part of the defendant to perform after the plaintiff had performed, and under these circumstances, there was, of course, want of mutuality, want of lawful consideration, and the agreement was therefore a nude pact at that time and remained so unless mutuality or consideration entered therein later in some manner which will satisfy the law. It becomes important, then, to ascertain what will satisfy the law in this behalf. Let us examine. We find, first, that it is elemental that while a valuable consideration is usually treated and thought of as something passing between the parties whereby one surrenders and the other receives something of value, that this is not essential. A consideration no more means that one party has profited, than it does that the other party has put himself to some trouble or inconvenience or abandoned some right or assumed some burden on the faith of the promise of the other party, and it is wholly immaterial that the party against whom the promise is sought to be enforced has received anything of value or an actual benefit to him for his promise. The law pertaining to the sufficiency of a consideration is satisfied if the moving party, the promisee, puts himself to inconvenience, trouble or expense, relying upon the faith of the promise of the party against whom the promise is sought to be enforced, for in such case the inconvenience, trouble and expense will be taken to have been incurred at the instance and request of the promisor. [School Dist. v. Scheidley, 138 Mo. 672-684, 40 S. W. 656; Halsa v. Halsa, 8 Mo. 303-307; German v. Gilbert, 83 Mo. App. 411; Koch v. Lay, 38 Mo. 147; Webb's Pollock on Contracts, 167;

9 Cyclopedia of Law and Proc., 308.] In such case the law, in a spirit of justice, regards that inconvenience, trouble and expense as having been invited and entailed by the promise of the other party and therefore impliedly at his instance and request, and the moving party having discharged his undertaking, it therefore affixes the mutuality of obligation and sufficiency of consideraction which relates back to the inception of the agreement as against the promisor and requires him to respond as well. This is the principle, as we understand it, as will be evidenced by consulting the following authorities in point. [School Dist. v. Scheidley, 138 Mo. 672, 40 S. W. 656; Laclede Const. Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384; Willets v. The Sun Mut. Ins. Co., 6 Amer. Rep. 31; South & North Ala. Ry. Co. v. R. R. Co., 39 Amer. St. 74; Muscatine etc. Co. v. Muscatine Lumber Co., 39 Amer. St. 284; Andreas v. Holcombe, 22 Minn. 339; Morgenstern v. Davis, 14 N. Y. Supp. 31; Storn v. U. S. 99 U. S. 76-83; Mills v. Blackall, 11 Ad. & Ell. (N. S.) 258; Kennaway v. Trelcavan, 5 Mees. & W. 501; 9 Cyclo. Law and Pro., 333; 7 Amer. and Eng. Ency. Law (2 Ed.), 115; Lawson on Contracts (2 Ed.), sec. 106.]

It is true that in such agreements, which at first are insufficient by reason of the want of the very essential element of every valid contract, sufficient consideration and mutuality, the promisor can, if he sees fit, revoke and recall the promise at any time prior to the promisee having moved toward its fulfillment and expended time, labor or money and inconvenience himself thereabout, for up to that time nothing having been done thereunder, by the promisee, it will remain a nude pact and is not obligatory. [Andreas v. Holcombe, 22 Minn. 338.] But if the promise is permitted to stand and with the knowledge of the promisor, the promisee expends time, labor or money, or otherwise inconveniences himself or forfeits any legal rights, relying upon the faith of the promise, the element of consideration and mutual-

ity is thereby supplied as of the date of the agreement and the contract at once becomes enforcible at law. It appears from the allegations of the petition that although the defendant was under no obligation to make the promise, and although it received no recompense for so doing, that nevertheless it did promise in writing to the plaintiff as alleged. No doubt this promise was purely a matter of accommodation to the plaintiff, but it appears that the promise was permitted to stand unrevoked and unrecalled when the defendant had the clear right to recall it for want of mutuality and consideration, and that the plaintiff, relying upon the faith of the promise, which he had a right to do, proceeded and with knowledge of the defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant. Under the circumstances stated, a majority of the court are of the opinion that a sufficient consideration and mutuality was imported into the agreement by such performance, which related back to its origin and rendered it a contract valid in law, and affixed a mutual obligation on the defendant to respond.

2. Since writing the foregoing opinion, the learned presiding judge has prepared a dissent and requested that the case be certified to the Supreme Court, as in his opinion the decision is in conflict with the decision of the Supreme Court in Blaine v. Knapp, 140 Mo. 241. In the opinion of the majority of this court, that case is entirely dissimilar from the one now under consideration. There the contract was to the effect that Blaine was to receive additional compensation provided the employer "changed its mind," and became of the opinion that his services were such as to demand additional compensation. The court said (l. c. 249) that: "this increase depended entirely upon the opinion of the management and there is no allegation in the petition that the management were of the opinion that he was entitled to it." Certainly there can be no similarity between that and

the case at bar, for here, while it may be said that the
plaintiff was to produce an "acceptable tenant" and
that it might be a matter of opinion as to what or who
would be an acceptable tenant, yet, according to the al-
legation, this whole matter is precluded, for it is alleged
in the petition that plaintiff, with the knowledge of the
defendant, expended a large amount of time and labor
in securing "an acceptable and satisfactory tenant for
the space embraced in said lease, *and did secure such
tenant for such space.*" The demurrer admits that the
tenant was procured and was acceptable to defendant.
The whole matter is thereby as much precluded as it
would have been had the defendant's president taken
the witness stand and given testimony to the effect that
the plaintiff had performed his part of the contract by
securing and producing a tenant which was entirely ac-
ceptable and satisfactory to the defendant; in fact, the
allegation that the plaintiff had secured "an acceptable
tenant" is the allegation which makes the case, for it
and it alone is the allegation which shows performance
on the part of the plaintiff from which arises the con-
sideration and affixes the mutuality of the obligation on
the defendant.

Entertaining these views, we are of the opinion that
the petition was sufficient and that the demurrer should
have been overruled. The judgment is therefore revers-
ed and the cause remanded. *Goode, J.,* concurs; *Bland,
P. J.,* dissents.

BLAND, P. J. (dissenting). — Omitting caption,
the petition is as follows:

"Now comes the plaintiff in the above-entitled cause
and by leave of court first had and obtained, files this, its
second amended petition herein, and for cause of action
states that it is a corporation duly organized and exist-
ing under and by virtue of the laws of the State of New
Jersey.

"That the defendant is a corporation organized and

existing under and by virtue of the laws of the State of Missouri.

"That the plaintiff was formerly known as the Wagner Typewriter Company, but it has duly changed its name to Underwood Typewriter Company.

"That defendant Century Realty Company is the successor of the Century Building Company.

"That on the fifth day of December, 1900, plaintiff entered into an agreement in writing with said Century Building Company, whereby plaintiff leased the space known as No. 309 North Ninth street in the city of St. Louis, State of Missouri, and certain space appurtenant thereto for a period of five years beginning on the first day of February, 1901, and ending on the thirty-first day day of January, 1906. That plaintiff thereupon entered into possession of said premises.

"That said agreement provided among other things, that neither said premises nor any part thereof should be assigned or underlet without the written consent of defendant indorsed thereon. That plaintiff secured from defendant its written agreement to give its written consent to an assignment of said lease to an acceptable tenant. That relying upon said written agreement, plaintiff, with the knowledge of defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant for the space embraced in said lease, and did secure such tenant for said space.

"That notwithstanding the fact that plaintiff had procured an acceptable tenant for said space, defendant refused and still refuses to consent to the assignment of said lease and to permit said tenant to enter into the possession of said premises though often requested so to do.

"That by reason of defendant's refusal to consent to said assignment of said lease as aforesaid, plaintiff was and is prevented by defendant from securing such tenant at a large advance over the rent reserved by de-

fendant under said lease to its damage in the sum of four thousand five hundred dollars.

"Wherefore plaintiff prays judgment for four thousand five hundred dollars."

To which petition, defendant filed a general demurrer, which demurrer was in due course of time sustained by the court. Plaintiff declining to plead further, judgment was given for defendant. From which action of the circuit court, plaintiff has appealed to this court.

The salient facts related in the petition are: first, that on the fifth day of December, 1900, plaintiff became the lessee of the premises described in the petition under a written lease executed by defendant for a term of five years; second, that under the terms of the lease, the plaintiff was prohibited from subletting the premises without the written consent of the defendant indorsed on the back of the written lease; third, that defendant gave its written consent to plaintiff to make this indorsement whenever plaintiff would procure an acceptable subtenant; fourth, that relying upon this promise, the plaintiff, at trouble and expense, procured an acceptable subtenant to whom it could have sublet at a profit to itself but defendant failed and refused to give its consent to a subletting of the premises to plantiff's damage, etc.

The demurrer was a general one and, hence, does not raise the question as to whether or not the petition is badly or inartistically drawn and should have been overruled unless the petition is wholly wanting in averments necessary to constitute a cause of action. [State ex rel. v. Carroll, 63 Mo. 156; Ferguson v. Davidson, 65 Mo. App. 193.] The doctrine is well settled that any injury or inconvenience to the promisee is a sufficient consideration to uphold a promise, though no benefit or advantage arises to the promisor (Carr v. Card, 34 Mo. 513) such as the incurring of expense and the assuming of liabilities by the promisee (Koch v. Lay, Garn, 38 Mo. 147; Lamp Co. v. Mfg. Co., 64 Mo. App.

l. c. 118, and cases cited; German v. Gilbert, 83 Mo. App. 411). And I will concede that if defendant had agreed to indorse its consent on the lease, that plaintiff might sublet a portion of the premises to B, and plaintiff had thereafter procured B to come in as a subtenant on terms profitable or advantageous to plaintiff, the contract would be enforceable. But it seems to me the promise to let in an *acceptable* tenant is illusory, for the reason it is upon a condition which reserves an unlimited option to defendant, the promisor, to say who shall or shall not be an acceptable subtenant, and for this reason the contract is unenforcible. [Blaine v. Knapp & Co., 140 Mo. 241, 41 S. W. 787.]

In Davie v. Lumberman's Mining Co., 93 Mich. 491, it is said, that an agreement by which miners are to work at mining in a specific pit for one dollar and fifty cents per ton, "as long as we can make it pay," was not of such a character as to entitle them to damages for its breach.

In Vogel v. Pekoc, 157 Ill. 339, it is said, that a contract to employ a person to work from time to time, his services to continue only as long as satisfactory to the employer, did not bind the employer to do anything. And it seems to me the contract between plaintiff and defendant does not bind the defendant to do anything. There is, therefore, a want of such certainty in the contract as to make it non-enforcible; for this reason I think the judgment of the circuit court sustaining the demurrer should be sustained, and I also think the majority opinion is opposed to the decision of the Supreme Court in the case of Blaine v. Knapp & Co., supra, and ask that the case be certified to the Supreme Court for its decision.